# DEALY *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF NORTH DAKOTA.

No. 1035. Argued March 20, 1894.— Decided April 2, 1894.

A *nolle prosequi* as to a count in an.indictment works no acquittal, but leaves
the prosecution as though no such count had been inserted in the indict-
ment.

A verdict of guilty or not guilty as to the charge in one count of an indict-
ment is not responsive to the charge in any other count.

In charging a conspiracy to defraud the United States of large tracts of
land by means of false and fictitious entries under the homestead laws, it
is not necessary to specify the tracts by number of section, township, and
range.

An entry of lands under the homestead law in popular understanding means
not only the preliminary application, but the proceedings as a whole to
complete the transfer of title, and in charging a conspiracy to obtain
public land by false entries, the word may be used in that sense in the
indictment.

A charge that an overt act was done according to and in pursuance of a
conspiracy which had been previously recited, is equivalent to charging
that it was done to effect the object of the conspiracy.

If an illegal conspiracy be entered into within the limits of the United
States and within the jurisdiction of the court, the crime is complete,
and the subsequent overt act in pursuance thereof may be done any-
where.

On December 16, 1892, an indictment was returned by the
grand jury in the District Court of the United States for the
District of North Dakota, charging this plaintiff in error,
together with others, with the crime of conspiracy to defraud
the United States as denounced in section 5440, Revised
Statutes, which reads :

"If two or more persons conspire either to commit any
offence against the United States, or to defraud the United
States in any manner or for any purpose, and one or more of
such parties do any act to effect the object of the conspiracy,
all the parties to such conspiracy shall be liable to a penalty
of not less than one thousand dollars and not more than ten

thousand dollars, and to imprisonment not more than two years."

The indictment was in seventeen counts. The first was as follows:

"That on the first day of April, in the year of our Lord one thousand eight hundred and ninety-one, in the county of Rolette, State of North Dakota, and within the jurisdiction of this court, one William W. Allen, one Michael Dealy, one Edward Laberge, one Peter Thibert, and one H. H. Fritz, and others to the grand jury unknown did commit the crime of conspiracy to defraud the United States, committed as follows:

"That at the time and place aforesaid the said William W. Allen, Michael Dealy, Edward Laberge, Peter Thibert, and H. H. Fritz, and others to the grand jury unknown did falsely, unlawfully, and wickedly conspire, combine, confederate, and agree together among themselves to defraud the United States of the title and possession of large tracts of land in said county of great value by means of false, feigned, illegal, and fictitious entries of said lands under the homestead laws of the United States, the said lands being then and there public lands of the United States, open to entry under said homestead laws at the local land office of the United States at Devil's Lake City, in said State, and that according to and in pursuance of said conspiracy, combination, confederacy, and agreement among themselves had as aforesaid the said Allen did persuade and induce one Charles Pattnaude to make filing under said homestead laws and thereafter to make proof and final entry under said laws for the lands known and described as follows: The south half of the northeast quarter and lots one and two of section six, in township one hundred and sixty-three north, of range seventy west, of the fifth principal meridian, said lands lying and being in said county, on which said lands said Pattnaude, as said Allen then and there well knew, had never made settlement, improvement, or residence, contrary to the form of the statute of the United States in such case made and provided, and against the peace and dignity of the United States."

In the further counts the conspiracy was charged in substantially the same language, but with it in each a separate overt act, that in the third being stated as follows:

" According to and in pursuance of said conspiracy, combination, confederation, and agreement, the said Allen did fraudulently and unlawfully induce and persuade one Frank Premeau to appear as a witness for one Charles Pattnaude in making final proof under said laws before H. H. Fritz, clerk of the District Court of the State of North Dakota in and for said county, being a court of record of said State, and as such witness before said Fritz to testify and make proof for said Pattnaude in effect that he had resided for more than five years immediately preceding the time of making said proof on the lands known and described as south half of the northeast quarter and lots one and two of section six, township one hundred and sixty-three, range seventy west, of fifth principal meridian, lying and being in said county, public lands of the United States and subject to entry under said laws of said land office, whereas, in fact, said Pattnaude, as said Allen well knew, had never resided on said land at any time within five years prior to making such proof, contrary to the form of the statute of the United States in such case made and provided, and against the peace and dignity of the United States."

The overt acts stated in the other counts were of a similar character. Prior to the trial a *nolle* was entered as to the second, fourth, fifth, sixth, ninth, and seventeenth counts. The case being tried on the remaining counts, the defendants Allen, Dealy, and Laberge were found guilty on all but the sixteenth. A motion for a new trial and one in arrest of judgment having been overruled, the defendant Dealy was sentenced to imprisonment for the term of one year and one month, and to pay a fine of $1000. To reverse such judgment and sentence he sued out a writ of error from this court.

*Mr. A. S. Drake* for plaintiff in error.

*Mr. Assistant Attorney General Conrad* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The first proposition of counsel for defendant is that the acquittal on certain of the counts works an acquittal as to all. There was in terms no verdict of not guilty as to any count. A *nolle* was entered as to several, but a *nolle* works no acquittal, and leaves the prosecution just as though no such count had ever been inserted in the indictment. Of those remaining, one, the sixteenth count, was not referred to in the verdict. It may have been simply overlooked by the jury. Be that as it may, the discharge of the jury under the circumstances was doubtless equivalent to a verdict of not guilty as to that count. Upon this, defendant's counsel say that the only offence charged is conspiracy, that "the indictment amounts to but one count, and one charge of conspiracy, with seventeen different overt acts," and that an acquittal on one count acquits him of the single offence charged in all the counts. But this is obviously a mistake. It is familiar law that separate counts are united in one indictment, either because entirely separate and distinct offences are intended to be charged, or because the pleader, having in mind but a single offence, varies the statement in the several counts as to the manner or means of its commission in order to avoid at the trial an acquittal by reason of any unforeseen lack of harmony between the allegations and the proofs. 1 Bishop on Criminal Procedure, § 422. Yet, whatever the purpose may be, each count is in form a distinct charge of a separate offence, and hence a verdict of guilty or not guilty as to it is not responsive to the charge in any other count. Take the case of an indictment for murder. Suppose in one count the homicide is charged to have been committed by means of a blow from a pick-axe, and in another by a shot from a pistol. While from the name of the deceased and the time and place of the killing it may be inferred that the same homicide is in the mind of the pleader, yet such inference is not, as a matter of fact, conclusive, and, as a matter of law, is overthrown by the dissimilarity in the means of the homicide, and it certainly

would be a novelty in criminal practice to have a verdict returned upon such indictment, finding the defendant guilty under the one count and not guilty under the other, adjudged a verdict of not guilty as to both.

In the case at bar the section of the statute under which this indictment was found requires not merely a conspiracy, but some act to carry into effect its object. This act is only one of the means by which the conspiracy is sought to be carried into effect, just as in the illustration given, the blow of the pick-axe and the shot from the pistol are means for the accomplishment of the homicide, and a verdict of not guilty as to any one of the counts in this indictment is not necessarily a finding against any conspiracy, but only that the conspiracy and the overt act therein stated did not both exist, while a verdict of guilty upon any other count finds both the conspiracy and the overt act named therein. There is no conflict between the findings, and no force to this objection.

Neither the testimony nor the instructions having been preserved in the record, the only other matter to which our consideration is directed is as to the sufficiency of the indictment. It is objected, in the first place, that there is no specification of the particular tract or tracts of which the defendants conspired to defraud the United States. There is nothing more definite than this, large tracts of land in the county of Rolette, State of North Dakota, such lands being public lands of the United States, open to entry under the homestead laws at the local land office of the United States at Devil's Lake City in said State. It is true, no tract is named by number of section, township, and range, and the language is broad enough to include any or all the public lands of the United States situate within that county, and subject to homestead entry at that land office. But manifestly the description in the indictment does not need to be any more definite and precise than the proof of the crime. In other words, if certain facts make out the crime, it is sufficient to charge those facts, and it is obviously unnecessary to state that which is not essential. Can it be doubted that if these defendants entered into a conspiracy to defraud the United States of public lands,

subject to homestead entry, at the given office in the named county, the crime of conspiracy was complete even if no particular tract or tracts were selected by the conspirators? It is enough that their purpose and their conspiracy had in view the acquiring of some of those lands, and it is not essential to the crime that in the minds of the conspirators the precise lands had already been identified.

In Dickinson's Guide to the Quarter Sessions, p. 355, is given the form of an indictment for a like conspiracy which, as appears, was twice before the King's Bench. *Rex* v. *Cooke*, 2 B. & C. 618; 5 B. & C. 538. In that indictment the conspiracy is charged in these words: "Did conspire, combine, confederate, and agree together unlawfully and unjustly to disturb, molest, and disquiet Sir George Jerningham, Bart., in the peaceable and quiet possession, occupation, and enjoyment of certain manors, messuages, lands, and hereditaments and premises, situate and being in the said county of S., of which he, the said Sir George Jerningham, then was, and for a long time had been, peaceably and quietly possessed." In describing the overt act it is stated that defendant did "break and enter a certain messuage, called Stafford Castle, situate in the county aforesaid, whereof the said Sir George Jerningham had long been, and then was, in the peaceable and quiet possession." In other words, there as here the description in the conspiracy part of the indictment is broad enough to include any lands within the county belonging to and in the possession of the party against whom the conspiracy was formed, but when the overt act of the conspirators is stated, then the particular tract in respect to which the act was committed is described.

It is further objected that the indictment is defective in its statement of the means by which the conspiracy was to be carried into effect. The language is by means of "false, feigned, illegal, and fictitious entries under the homestead laws of the United States." It is insisted that the word "entry" in homestead cases has a settled technical meaning, and refers simply to the initiation of the proceedings, and the language of Mr. Justice Lamar, speaking for this court in *Hastings & Dakota Railroad* v. *Whitney*, 132 U. S. 357, 363,

is cited : " Under the homestead law three things are needed to be done in order to constitute an entry on public lands : First, the applicant must make an affidavit setting forth the facts which entitle him to make such an entry ; second, he must make a formal application ; and, third, he must make payment of the money required. When these three requisites are complied with, and the certificate of entry is executed and delivered to him, the entry is made — the land is entered."

The argument is that the word "entry," having a technical meaning, must be taken with that meaning in this indictment ; that, as thus understood, an entry in a homestead case being but a preliminary act, does not operate to divest the title of the government, and, as is said in the brief : " The charge that defendants conspired to defraud the government by means of false entries to lands under the homestead laws will thus be seen to be a charge of an innocent act."

But the popular understanding of the word is not thus limited. It is common to speak of an entry of land under the homestead law, meaning thereby not a mere preliminary application, but the proceedings as a whole, the complete transfer of title. Counsel concede that in cash purchase and preëmption cases it is even technically used to describe the final proof or final purchase, but seek to draw a distinction between its use in those cases and under the homestead law. Even if it were conceded that such a distinction is recognized in the statutes and authorities, it would not change the significance of the popular use. Clearly, it is used in this indictment in its popular sense, for, when we turn to the description of the overt acts, we find matters subsequent to the original entry. Thus, in the first count, one of the defendants is charged to have induced " Charles Pattnaude to make filing under said homestead laws, and thereafter to make proof and final entry under said laws for the lands known," etc. Something of equal significance is found in each of the subsequent counts upon which conviction was had. It is one purpose of an indictment to inform the defendant of the crime of which he is charged, and there can be no doubt that this defendant understood the exact sense in which the word " entry " was

used in this indictment, and was not misled into the belief that the only crime charged against him was of a conspiracy to acquire lands of the United States by means of wrongful preliminary proof.

It is also said that the indictment does not charge that the overt act was done "to effect the object of the conspiracy," as the statute expresses it, but is charged to have been done simply "according to and in pursuance of said conspiracy." But this is too great a refinement of construction. Something more is intended by the use of the words "according to and in pursuance of" than that the overt act was done after the formation of the conspiracy, or even that it was simply a result of the conspiracy. It implies that the act was one contemplated by the conspiracy, "according to," and was done in carrying it out, "in pursuance of," something which the conspiracy provided should be done, something which when done should tend to accomplish the purpose of the conspiracy.

Again, it is objected that the time at which the overt act was done is not specifically stated, but the date of the conspiracy is alleged, and that the overt act was "according to and in pursuance of." Necessarily, therefore, it was subsequent to the conspiracy.

Still, again, it is urged that the overt acts, the inducing and persuading, are not charged to have been done within the limits of the United States. The conspiracy is charged to have been entered into in the State of North Dakota, and the proof necessary to make final entry at the land office named would have to be used in that State. While it is true there is no specific allegation that the act of inducing and persuading was done within the jurisdiction of the court, and while it may be possible, as counsel suggest, that so far as this record discloses all the solicitation and persuasion exercised by the defendant was done within the limits of Canada, and outside the jurisdiction of the trial court, yet the solicitation was to do a wrongful act within the State of North Dakota, *In re Palliser*, 136 U. S. 257, 265, and that solicitation was not a part of the conspiracy, but subsequent to and in

furtherance of it. The gist of the offence is the conspiracy. As said by Mr. Justice Woods, speaking for this court, in *United States* v. *Britton*, 108 U. S. 199, 204: "This offence does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute, that there must be an act done · effect the object of the conspiracy, merely affords a *locus penitentiæ*, so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute." Hence, if the conspiracy was entered into within the limits of the United States and the jurisdiction of the court, the crime was then complete, and the subsequent overt act in pursuance thereof may have been done anywhere.

These are all the questions which we consider of importance. Several other matters are suggested by counsel. We have examined all of them, and deem it unnecessary to prolong this opinion by noticing them in detail. We see no error in the record, and the judgment is

*Affirmed.*

Mr. Justice Jackson did not hear the argument or take part in the decision of this case.