Mr. Justice Robb
delivered the opinion of the Court:
We will first consider the motion in arrest of judgment. The grounds of this motion are that the indictment does not sufficiently describe the scheme to defraud; that it does not allege knowledge on the part of Dufour of the falsity of the representations of the other defendants; and that the indictment is insufficient to charge any offense against Dufour.
Every defendant, under our Constitution, is entitled to be .advised of the charge he is to meet, that he may have a fair opportunity to prepare his defense, and that he may avail himself of a conviction or acquittal thereafter. Where, however, the sufficiency of an indictment is first challenged in a motion in arrest, no “defect or imperfection in matter of form only,” not tending to the prejudice of the defendant, will be considered. Sec. 1025, U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 720. If, therefore, the indictment in this case charges an offense against the defendant, defects or imperfections in matter of form will not avail him unless it appears that he was prejudiced thereby. Connors v. United States, 158 U. S. 408, 39 L. ed. 1033, 15 Sup. Ct. Rep. 951; Rosen v. United States, 161 U. S. 29, 40 L. ed. 606, 16 Sup. Ct. Rep. 434, 480, 10 Am. Crim. Rep. 251. But before proceeding to an analysis of the indictment it is well to direct attention to the nature of the charge therein. The gist of the offense alleged against the persons accused is the conspiracy. The offense around which the conspiracy centered was the devising of a sheme or artifice to defraud by means of the Postoffice establisment of the United States, contrary to the provisions of sec. 5480, U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 3696.
In Williamson v. United States, 207 U. S. 425, 52 L. ed. 278, 28 Sup. Ct. Rep. 163, the court had under consideration .an indictment charging a conspiracy to commit the offense *501 of subornation of perjury. It was there alleged that the indictment was fatally defective by reason of the omission therefrom of elements claimed to be essential to constitute the offense of perjury, and other elements necessary to be averred in ,'espect to the alleged suborners. The court, after stating the contention, said: “This is based upon the assumption that an indictment alleging a conspiracy to suborn perjury must describe not only the conspiracy relied upon, but also must, with technical precision, state all the elements essential to the commission of the crimes of subornation of perjury, and perjury, which it is alleged is not done in the indictment under consideration. But in a charge of conspiracy the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy.” In the light of this ruling, we will now proceed to an analysis of the present indictment. It may be conceded at the outset that it contains much unnecessary detail, being more in the nature of a history of the alleged objectionable transactions than a concise statement of a criminal charge. But, even so, if it clearly charges that a conspiracy was entered into, and sufficiently identifies the offense which was the object of the conspiracy, the appellant can not now complain. As the first count of the indictment contains more unnecessary matter than the second, we will here confine ourselves to the second count. In that count it is alleged that Lewis, Dufour, and Huston, on the 2d day of January, 1908, in this District, “did then and there conspire, combine, confederate, and agree together to commit an act made an offense and crime by sec. 5480 of the Revised Statutes of the United States, as amended by act of Congress approved on the 2d day of March, in the year of our Lord one thousand eight hundred and eighty-nine, that is to say, the said defendants, the said Harvey M. Lewis, the said Everett Dufour, and the said James N. Huston, did conspire, combine, confederate, and agree together in devising and intending to devise a scheme and artifice to defraud such persons, firms, and corporations out of their money and property, whom they, the *502 said Harvey M. Lewis, the said Everett Dufour, and the said James N. Huston, might cause and induce to apply to him the said Harvey M. Lewis, and to him the said James N. Huston, and to the American Finance Company, or to the Enterprise Trust Company, a body corporate, or to the National Trust Company of Washington, District of Columbia, a body corporate, to have corporate stocks, bonds, and securities guaranteed.” It is then averred that said scheme and artifice to defraud was to be further carried out by Dufour representing himself under the firm and style of Everett Dufour & Company, to be engaged as a broker in making sales of stocks, bonds, and securities, and representing that he would sell corporate stocks and bonds guaranteed as to principal by a guaranty company, and soliciting such persons, firms, and corporations to have their stocks, bonds, and securities guaranteed, “and representing that the National Trust Company of Washington, District of Columbia, a body corporate, and the Enterprise Trust Company, a body corporate, were regular guaranty companies, and that, upon obtaining an agreement to guarantee the stocks, bonds, and securities of such persons, firms, and corporations last aforesaid, he, the said Everett Dufour, acting under the firm and style name of Everett Dufour & Company, would and could make sales of such stocks, bonds, and securities of such persons, firms, and corporations as last aforesaid.”
It is then averred that said scheme and artifice to defraud was to be further carried out by the defendants Lewis and Huston representing themselves to be officers and directors of the National'Trust Company, incorporated under the laws of the District of Columbia, and of the Enterprise Trust Company, another corporation, and by the said Lewis representing himself to be the manager of said American Finance Company, and by said Lewis and Huston further fraudulently representing that said National Trust Company and said Enterprise Trust Company were authorized to guarantee stocks, bonds, and securities, and were corporations of such standing that such guaranty would add to the value of said stocks, bonds, and securities to be so guaranteed, and by said Lewis and Huston further fraud *503 ulently representing that said National Trust Company and said Enterprise Trust Company were fully equipped to guarantee stocks, bonds, and securities, and by fraudulently representing that said guaranty would be of value; whereas, in truth and in fact, said National Trust Company was not authorized' under its charter to guarantee or agree to guarantee stocks, bonds, and securities, and said National Trust Company and said Enterprise Trust- Company were not corporations of such standing that such guaranty by them, or either of them, would or could add to the value of such stocks, bonds, and securities; that said companies were not corporations fully equipped to guarantee stocks, bonds, and securities, “all of which the said Harvey M. Lewis and the said James N. Huston then and there well knew.”
Said Lewis, Huston, and Dufour, in further consummation of the conspiracy, it is averred, were to cause and induce such persons, firms, and corporations to pay to said National Trust Company and to said Enterprise Trust Company “a fee and money for the agreement to guarantee said stocks, bonds, and securities as last aforesaid, whereas in truth and in fact said agreement to guarantee when so obtained was not and would not be of value to such persons, firms, and corporations last aforesaid, by reason of the premises aforesaid; but as part of said unlawful conspiracy as last aforesaid, the said Harvey M. Lewis, the said James N. Huston, and the said Everett Dufour were to fraudulently convert said fee and money paid by them the said persons, firms, and corporations as last aforesaid, to the use of them and each of them, the said Harvey M. Lewis, the said James N. Huston, and the said Everett Dufour, without giving anything of value therefor.”
The manner in which the Postoffice establishment of the Hnited States was used in furtherance of the illegal scheme and artifice to defraud is then set forth. It is not contended that the overt acts are not set forth in sufficient detail. The conspiracy is charged in concise and technical language. The general object of the conspiracy is alleged to have been a violation of sec. 5480, U. S. Rev. Stat. As that section does not *504 fully and clearly set forth all the elements necessary to constitute the offense therein denounced, it is necessary that the pleader set out the scheme with sufficient particularity to bring it within the inhibition of the statute, and to enable the accused to know what he will be required to meet upon the trial. Evans v. United States, 153 U. S. 584, 38 L. ed. 830, 14 Sup. Ct. Rep. 934, 9 Am. Crim. Rep. 668; Horn v. United States, 105 C. C. A. 163, 182 Fed. 721. The indictment, after charging that the conspiracy was to violate said sec. 5480, U. S. Rev. Stat., contains an averment of the general character and purpose of the scheme devised, which was to defraud such persons, firms, and corporations out of their money as the conspirators might induce to apply to Lewis and Huston, or to the two named corporations, to have corporate stocks, bonds, and securities guaranteed. There is no ambiguity about this general charge. The part assigned to or to be undertaken by each of the defendants in the carrying out of the unlawful scheme then follows. Dufour was to represent himself, under a certain name, to be engaged as a broker in the sale of stocks, bonds, and securities, and to represent that he could and would sell corporate stocks, bonds, and securities guaranteed as to principal by a guaranty company, and to solicit such persons, firms, and corporations, to have.their stocks, bonds, and securities guaranteed, and to represent that said National Trust Company and said Enterprise Trust Company were regular guaranty companies. Lewis and Huston, as their part of the conspiracy, were to represent themselves to be officers and directors of the two named trust companies, and Lewis was to represent himself to be the manager of the American Finance Company. Lewis and Huston were further fraudulently to represently that said National Trust Company and said Enterprise Trust Company were authorized to guarantee stocks, bonds, and securities, and that their standing was such that their guaranty would add to the value of stocks guaranteed by them. Lewis and Huston were further fraudulently to represent that these two trust companies were fully equipped to guarantee stocks, bonds, and securities.
*505 It is then averred that said National Trust Company was not authorized -under its charter to guarantee stocks, bonds,, and securities, and that the standing of said company and said Enterprise Trust Company was not such as would or could add to the value of stocks, bonds, and securities guaranteed by them; that said companies were not fully equipped to guarantee stocks, bonds, and securities.
The conspiracy was further to be carried out by the defendants, Lewis, Huston, and Dufour, inducing persons, firms, and corporations to pay to said trust companies a fee and money for the agreements to guarantee said stocks, bonds, and securities, and said defendants “were to fraudulently convert said fee and money paid by them the said persons firms, and corporations as last aforesaid, to the use of them and each of them, the said Harvey M. Lewis, the said James N. Huston, and the said Everett Dufour, without giving anything of value-therefor.”
It is insisted that the failure of the pleader, after stating-the fraudulent representations to be made by Lewis and Huston in furtherance of the conspiracy, to charge knowledge on the part of Dufour of the falsity of such representations, is fatal. In making this contention appellant fails entirely to consider that this is an indictment for conspiracy, and not one under sec. 5480. The indictment, at the outset, brings the three defendants together in an unlawful agreement, the object of which is set forth. The part assigned or to be performed by each conspirator is set forth. Dufour was to make certain representations and to do certain things tending toward the accomplishment of the common unlawful purpose. Lewis and Huston were to do certain, other things to the same end. It is set forth that certain of the representations which they were-to make were to be fraudulent representations. The averment, therefore, that they knew the character of those representations is superfluous, and may be treated as surplusage. If the original unlawful agreement contemplated and required the making of those fraudulent representations, and such is the import of of the language employed, how can it be said that any one of the- *506 parties to that agreement was without knowledge of the fraudulent character of those representations ?'
Dealy v. United States, 152 U. S. 539, 38 L. ed. 545, 14 Sup. Ct. Rep. 680, 9 Am. Crim. Rep. 161, involved an indictment for conspiracy to defraud the United States of large tracts of land by means of false and fictitious entries. under the homestead law. The indictment did not specify the tracts by number •of section, township, and range, and this was held unnecessary. In the first count it was averred “that, according to and in pursuance of said conspiracy, combination, confederacy, and agreement among themselves had as aforesaid, the said Allen (one of the conspirators) did persuade and induce one Charles Pattnaude to make filing under said homstead laws, and thereafter to make proof and final entry under said laws for the lands known and described as follows, * * * on which said lands said Pattnaude, as said Allen then and there well knew, had never made settlement, improvement, or residence,” etc. It will be observed that knowledge on the part of the other conspirators of the true character of the Pattnaude entry was not directly averred. The court, in disposing of the contention that the words, “according to and in pursuance of said conspiracy,” did not amount to a charge that Allen’s overt act was done “to effect the object of the conspiracy,” said: “Something more is intended by the use of the words, ‘according to and in pursuance of,’ than that the overt act was done after the formation of the ■conspiracy, or even that it was simply a result of the conspiracy. It implies that the act was one contemplated by the conspiracy, ‘according to,’ and was- done in carrying it out, ‘in pursuance of,’ something which the conspiracy provided should be done, something which when done should tend to accomplish -the purpose of the conspiracy.” So here the averments as to what was to be done by each of the conspirators in carrying out the conspiracy imply that the character of those acts was agreed upon at the outset.
The history of the case, moreover, shows that this defendant, at the time of his trial, was fully aware of the precise offense with which he was charged.- While the assertion by him in *507 his applications for a speedy trial, to the effect that he had no intention to demur to the indictment, or of entering any plea •other than that of not guilty thereto, should not and would not prevent him from taking advantage of a fatal defect in the indictment, the court is at liberty to consider such declarations in determining the question whether any alleged informality •or ambiguity in the indictment tended to his prejudice. Rosen v. United States, 161 U. S. 29, 40 L. ed. 606, 16 Sup. Ct. Rep. 434, 480, 10 Am. Crim. Rep. 251; United States v. Clarke, 37 Fed. 106. We think the indictment sufficiently identifies the •offense which the conspiracy was formed to commit.
As to the motion for a new trial: The defendants requested the court to instruct the jury that while they might find some fact to be established from the circumstances disclosed by the testimony, and infer the existence of some other fact reasonably resulting therefrom, they must stop there, and not place an inference upon an inference. The language of the charge as submitted to the court, and which we will not here repeat, is somewhat involved and ambiguous, and if given without qualification, would have tended to the confusion'of the jury. To the refusal of the court to grant the instruction, an exception was noted in behalf of the defendants. The court in its charge to the jury said: “The only danger that a jury need guard itself against in the consideration of circumstantial evidence is that it shall not attach to a fact which it finds to be proven an inference which that fact does not naturally carry. * * * Having in mind, then, that the difference between direct and •circumstantial evidence is that instead of taking the word of a human creature as to a fact, you take the word of another fact, assigning to the first fact the natural inference which it suggests to the human mind, be careful not to permit your minds to be carried to the belief of the existence of a fact which really is not indicated by the existence of the first fact, which you find to be established by the evidence.”
We think the court in this language covered the point which the defendants had in mind, and that the jury understood that *508 they were not at liberty to infer one fact from another, unless that other was established by the evidence.
It is next specified as error that the court refused to instruct the jury, as requested by the defendants, that the allegation of the indictment that it was the intent of the defendants to appropriate to themselves, without giving anything of value-therefor, the moneys received, was material and necessary, and must be established beyond a reasonable doubt before the jury could find the defendants, or any of them, guilty. This point was fully covered by the court in other instructions granted the defendant Lewis, and applicable to all the defendants. In-one of these prayers the jury were told that, in order to find any one of the defendants guilty as charged in the indictment,, they must find from the evidence, beyond a reasonable doubt,, “that such defendant had knowledge of the said alleged scheme, and knowledge that the said representations concerning the said companies as aforesaid were false in the particulars, or some of them, aforesaid.” In another the jury were told that before they could find any defendant guilty, they must “find from the evidence, beyond a reasonable doubt, that he had knowledge both of the scheme alleged in the indictment and its-fraudulent character as alleged, and also of the intended use-of the said mails in execution thereof.” In still another they were further told that before they could find any one of the defendants guilty as charged in the indictment, they must “find from the evidence, beyond a reasonable doubt, that such de-. fendant entered into such agreement or understanding corruptly, and with intent to defraud, as in the indictment alleged.”
Certain instructions were requested by the government, and' granted by the court over the objection of the defendants, the-only serious objection as now assigned to these instructions-being that there was nothing under the indictment proper'to be submitted to the jury. We have already disposed of this objection by sustaining the indictment.
A motion for a new trial was made in behalf of the defendant Huston. This motion the court granted. The court, as appears from the record, assigned as its reasons for the granting of this- *509 motion, that while there was ample evidence in the case connecting Huston with the active affairs of the enterprise with which he and Lewis were identified, to have led him to inquire more particularly as to the methods which Lewis was, adopting, and to have rendered him responsible in any civil suit on the theory of •constructive knowledge, the court was not satisfied that it had clearly instructed the jury as to the necessity of finding actual knowledge on the part of Huston of the falsity of the representations made by Lewis, and therefore set aside the verdict as to Huston. “With respect to the defendants Dufour and Lewis,” •said the court, “it is proper that the verdict be sustained. There are established facts which could not have had existence upon the theory of the innocence of either one of them. It would be turning away from the ordinary processes of human understanding to say that, in view of the evidence the jury heard, there is the slightest doubt of the guilt of either Lewis or Dufour.”
The qustion whether or not Huston was entitled to a new trial as matter of right is not before us. The question we are to determine is whether the granting of a new trial to Huston, in the circumstances of this case, necessitates the granting of a new trial to each of the other defendants. The general rule appears to be that where two or more persons have been convicted of conspiracy, and a new trial is awarded to one, it must be awarded to all. This rule was first announced in Reg. v. Gompertz, 9 Q. B. 824, where the jury had returned a verdict of guilty under an indictment for conspiracy involving five defendants. Lord Denman, Ch. J., in granting a new trial, said: “We might perhaps see no ground for disturbing the verdict'so far as it affects Gompertz; but into this we do not inquire, for we cannot grant a new trial <!as to one conspirator without granting it to all who are convicted. As, therefore, we cannot separate the defendants, there must be a new trial as to all.” This rule was followed in Com. v. McGowan, 2 Pars. Sel. Eq. Cas. 341, and in Isaacs v. State, 48 Miss. 234, 1 Am. Crim. Rep. 103.
In United States v. Cohn, 128 Fed. 615, an indictment charging conspiracy against Cohn, Browne, and others to the grand jurors unknown, there was a verdict of guilty against Cohn and *510 Browne. Upon an application by each defendant for a new-trial, the court reviewed the evidence, granted Cohn’s application, and denied Browpe’s. The court ruled that Reg. v. Gompertz and Com. v. McGowan were not in point, saying: “Cohn is granted a new trial because no cause of action was proved against him, and the indictment should have been dismissed as to him by the court. Had such dismissal been ordered, nevertheless Browne’s case could have been submitted to the jury.” The case was taken to the circuit court of appeals and there affirmed. Browne v. United States, 76 C. C. A. 31, 145 Fed. 1.
There is much analogy between the present case and the one-last cited. Here, as in that ease, there was evidence tending to-show that both Lewis and Dufour participated in the unlawful agreement. After stating in considerable detail the manner in which the scheme was carried out, the record states: “And further to maintain the issues on its part joined, the government adduced evidence of other facts and circumstances tending to-show knowledge on the part of the defendant Dufour of the false statements and misrepresentations made by the defendants Lewis and Huston, and of a fraudulent intent on the part of' said Dufour to use the United States mails for the making; thereof in conspiracy with said defendants Lewis and Huston.” As to the falsity of the statements made by Lewis in furtherance of the unlawful scheme, there can be no question. Indeed, the falsity of those statements is admitted. Whether actual knowledge of the falsity of such statements -was brought home to Huston could have no bearing upon the question of the guilt or innocence of Dufour; in other words, in the circumstances of this case the question of Huston’s guilt in noway affected the rights of Dufour.
Had a new trial been awarded Huston upon the ground of error in the admission of evidence, and that evidence had also related to the other defendants and had been in any manner to-their prejudice, all the defendants would necessarily have been entitled to a new trial. We have carefully examined this record, however, and fail to find anything therein to support the contention that the granting of a new trial to Huston should also en *511 title Dufour to one. Supposing Dufour’s motions for a separate trial had been granted, and he had been tried and convicted, and supposing that each of the other defendants had been separately tried and convicted, would it still be contended that the granting of a new trial to Huston, for the reasons assigned, would also entitle the other defendants to a new trial ? We think there is but one answer to the proposition. The more reasonable rule appears to be that where, as in this case, the granting of a new trial to on of several defendants convicted of conspiracy is upon grounds or errors in no way prejudicial to the rights of the other defendants, the verdict as to them should be allowed to stand..
The judgment must be affirmed. Affirmed.