UNITED STATES of America,
Appellee,

v.

George BOSWELL, Appellant.

UNITED STATES of America,
Appellee,

v.

John Pierce HELLAMS, Appellant.

UNITED STATES of America,
Appellee,

v.

Charles Ambry BARRETT, Appellant.

Nos. 10577, 10604, 10659.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 9, 1967.

Decided Feb. 7, 1967.

Robert B. Thompson, Gainesville, Ga. (Robinson, Thompson, Buice & Harben, Gainesville, Ga., on brief), for appellant George Boswell.

Melvin K. Younts, Greenville, S. C., and Porter B. Byrum, Charlotte, N. C. (Louis A. Trosch, Byrum & Byrum, Charlotte, N. C., and Younts, Reese & Cofield, Greenville, S. C., on brief), for appellant John Pierce Hellams.

Clifford F. Gaddy, Jr., Greenville, S. C., Court-appointed counsel, for appellant Charles Ambry Barrett.

Albert Q. Taylor, Jr., Asst. U. S. Atty. (John C. Williams, U. S. Atty., on brief), for appellee.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

These are the appeals of three of eight defendants charged with participation in a conspiracy to steal, transport, and alter the identification of automobiles in violation of 18 U.S.C.A. Sections 2312 and 2313.

The government's theory, amply supported by evidence at the trial, was that two coconspirators (not indicted) were employed to steal and deliver automobiles, and thereafter the true identification numbers were obliterated and new identification numbers were provided by taking them from purchased wrecked salvages identical to the make and model of the stolen car. Some of the conspirators would remove from the wrecked vehicles the serial plate and all locks for the ignition, doors, and trunk. The package was known in the business as "sack salvage."

### Boswell

The evidence clearly established that three salvage sacks were obtained from Boswell and used to conceal the identity of three stolen automobiles. In addition, there was testimony sufficient to permit the jury to infer that some of the stolen automobiles were driven from Boswell's place of business to other places of disposition and sale. We think the evidence was sufficient to be submitted to the jury and to support a verdict of Boswell's guilt.

Boswell earnestly insists that the court erred in admitting hearsay testimony of government witness Roberts. Roberts was permitted to testify over timely objection that Hellams and King told him that they had bought sack salvage from Boswell and that they told him that some of the estimated 125 cars driven by Roberts from Boswell's place of business were stolen vehicles. In order for such testimony to be admissible against Boswell, it must have been made (1) during the pendency of the conspiracy and (2) in furtherance of its objectives. It is admissible under these circumstances only after a prima facie case of conspiracy is established, and only then if there

is proof *aliunde* that the one sought to be implicated by the testimony is connected with the conspiracy.

 Boswell concedes in his brief, arguendo, that the evidence contained in the record might establish prima facie a conspiracy among some of the defendants. We disagree with his contention that there was no proof *aliunde* connecting Boswell with the conspiracy and that the hearsay statements attributed to Hellams and King were not made in furtherance of the conspiracy. Roberts explained that Hellams and King told him the vehicles were stolen because "they was wanting me to take precaution not to get caught driving the cars, speeding." Such a purpose would be in furtherance of the conspiracy. We think the three salvage sacks obtained from Boswell and used to conceal the identity of three stolen automobiles [1] constitutes proof *aliunde* connecting him with the conspiracy sufficiently to make competent the testimony to which objection was made.

 Boswell further insists that the court erred in refusing to instruct the jury that the government must prove that one of the overt acts in the conspiracy indictment occurred in the Western District of South Carolina. A conspiracy indictment may be prosecuted either at the place where the conspiracy was formed, Dealy v. United States, 152 U.S. 539, 14 S.Ct. 680, 38 L.Ed. 545 (1894), *or* where any of the overt acts were committed, Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). The indictment charged that the formation of the conspiracy occurred in the Greenville Division of the Western District of South Carolina, and further charged the commission of several overt acts within that district. There could not have been a conviction under the indictment without a finding by the jury that the conspiracy was formed in the Greenville Division of the Western District of South Carolina for the simple reason that the indictment so specified and no other conspiracy was charged. The jury was told that they should in-itially consider and first determine whether or not the conspiracy "existed as alleged in the indictment." Where the indictment itself locates the place of formation of the conspiracy, we think a general instruction is sufficient with respect to the venue question.

### Barrett

 Barrett operated a two-man garage located immediately behind his home. The jury could have found properly that a stolen 1964 blue Pontiac was altered at Barrett's garage to obliterate its true identification numbers and to substitute sack salvage identification numbers furnished by another conspirator. True, it does not appear affirmatively that Barrett was actually present when the illegal alteration was being accomplished. Considered alone, the testimony would be insufficient to put Barrett in the web of the conspiracy, but one of the confessed thieves testified that Barrett and another conspirator actually instructed him in the technique of stealing automobiles, i. e., how to "pop a switch." If believed by the jury, that testimony is sufficient to establish Barrett's participation in the conspiracy and becomes persuasive of his guilt when considered in connection with the alteration of a stolen vehicle so close to his residence.

 Barrett's other assignment of error is stated in the form of a question: "is realization of profit or gain an element of the crime of conspiracy?" The answer is "no." Clearly, division of profits may be an integral part of a conspiracy and proof of the same (if available) would strongly tend to prove guilt. But a sharing of the fruits of the conspiracy has never been held, so far as we know, to be an essential element of the offense. Rizzo v. United States, 304 F.2d 810 (8th Cir. 1962), relied on by Barrett, is not to the contrary.

### Hellams

 Hellams does not challenge the sufficiency of the evidence to support the

---

[1]. That they were so used was established by evidence independent of Roberts' testimony.

784

guilty verdict. Directly or indirectly, he was connected with eight of the nine stolen automobiles. Hellams primarily insists that he was denied a fair, impartial trial because two of the coconspirators who testified against him were awaiting sentence in either state or federal court and were thus under compulsion to perjure themselves in order to please the prosecuting authority. It is urged that offering the testimony of coconspirators who are under compulsion inherent in awaiting sentencing is a violation of the Fifth and Sixth Amendments to the United States Constitution. We are asked to create a new rule outlawing testimony of persons awaiting sentence for criminal offenses. We think it beyond our province to do so. The motivation to testify is not necessarily the same as the motivation to testify falsely. Hellams was afforded some protection by the right of cross-examination. Counsel were free to impugn the motivation of the witnesses to the jury and attempted to do so. There was no intimation in the record nor any offer of proof that any promise, express or implied, had been made by the United States in consideration of the testimony of the prosecuting witnesses. The impact of the argument is diminished by the fact that another coconspirator, Lejune, effectively testified for the government although he had already been sentenced to a ten-year term of imprisonment on state charges. In our judgment, no constitutional right of Hellams has been infringed by allowing coconspirators who have not yet been punished to testify against him.

Hellams' other assignment of error is that the district judge abused his discretion in overruling Hellams' motion for a severance. It is well settled that the granting of separate trials to persons jointly indicted is a matter of discretion. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. Miller, 340 F.2d 421 (4th Cir. 1965). The severance argument goes to the heart of the conspiracy technique.

From the prosecutor's standpoint, perhaps the chief appeal of the conspiracy form of indictment is the opportunity to dispose of multiple prosecutions in one trial. There are, of course, inherent dangers in such a process. See Krulewitch v. United States, 336 U.S. 440, 445–458, 69 S.Ct. 716, 93 L.Ed. 790 (1949) [Mr. Justice Jackson, concurring]; Hyde v. United States, supra, 225 U.S. at 384–391, 32 S.Ct. 793, 56 L.Ed. 114 [Mr. Justice Holmes, dissenting]. In terms of sheer numbers, we recognize that there are limitations as to how many defendants may fairly be included in one trial without the entire enterprise becoming unmanageable both for judge and jury.

We think, however, on the facts of this case that the experienced district judge was able to and did in fact keep separate in the minds of the jury the elements of the conspiracy, the overt acts, and the separate participation of each defendant. We find no abuse of discretion in the denial of the motion for severance. See United States v. Bryant, 364 F.2d 598 (4th Cir. 1966).

No. 10,577 Affirmed.
No. 10,604 Affirmed.
No. 10,659 Affirmed.