OPINION *Page 2 
{¶ 1} Defendant-appellant, Richard G. Dorsey, appeals from his conviction and sentence in the Licking County Court of Common Pleas on one count of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(c) and three counts of Gross Sexual Imposition, felonies of the fourth degree, in violation of R.C. 2907.05(A)(5). The plaintiff appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} Bonnie Parker was born on December 10, 1926. (1T. at 145). Prior to February 2006, Bonnie lived independently in an apartment in Pataskala. Bertha Dorsey, her daughter, and appellant, Bertha's husband, assumed the responsibility of providing her with needed care and assistance. Appellant took prescription medicine to her before and after work and often brought her dinner.
 {¶ 3} On February 25, 2006, a Pataskala police officer took an offense report from Pamela Parker regarding her mother Bonnie Parker. The report was turned over to Detective Andy Waugh for investigation. After the detective interviewed Bonnie Parker, he sent her to Grant Hospital in Columbus for a forensic rape examination. In the meantime, the detective collected evidence from her apartment. He found a semen stain on a chair in the living room. DNA testing established that the semen belonged to appellant.
 {¶ 4} At the hospital, Bonnie Parker told Kailey Mahan, a forensic nurse that two days earlier, her son-in-law, appellant, hugged her, grabbed her breasts and vagina, got on top of her, and engaged in vaginal intercourse with her. She stated that while this was happening, "I fought him." (1T. at 227). She further testified that Bonnie told her *Page 3 
"he's been doing it to me for a while." (1T. at 228). Ms. Mahan noted a bruise on Bonnie's left inner thigh. (1T. at 230). She further noted redness in her right labia minora and tearing in the posterior fourchette. (1T. at 232). Additionally, Ms. Mahan noted "purple, red bruising . . . to the vaginal wall." (1T. at 236). Finally, Ms. Mahan noted that Bonnie had been experiencing pain and discomfort due to her injuries. (1T. at 238). Ms. Mahan noted the trauma was consistent with Bonnie Parker's verbal account.
 {¶ 5} In December 2006, the Licking County grand jury returned an indictment charging appellant with three identically worded counts of rape and three identically worded counts of gross sexual imposition ("GSI). Each count identified Bonnie Parker, his mother-in-law, as the alleged victim and averred that the offense conduct occurred "between the dates of February 2005 and February 22, 2006." Each count alleged that each offense was committed by force or threat of force "and/or" while Ms Parker's ability to consent to, or resist, sexual relations was substantially impaired due to her mental or physical condition, or advanced age.
 {¶ 6} Bonnie Parker did not testify in the jury trial. The parties agreed before trial that she was incompetent to testify. (1T. at 57-64). The state relied on her forensic interview at the hospital as its evidence of a specific incident of sexual intercourse between her and the appellant.
 {¶ 7} Bonnie Parker was eighty years old at the time of trial. (1T. at 136). She had been a patient of Dr. Ronald Vargo since 1993. (1T. at 98). Ms. Parker suffers from hypertension, diabetes, heart disease, and dementia. (Id. at 98). Dr. Vargo testified, "Multi-infarct dementia" is "a condition based on underlying medical conditions, hypertension, diabetes, heart disease, and basically causes hardening of the arteries in *Page 4 
the brain, and over time the blood flow is choked off, so those areas of the brain just die away." (1T. at 99-100). Dr. Vargo testified that Bonnie began having memory problems in the year 2000. (Id. at 101; 126). By the year 2003, her problems progressed to the stage where medication was prescribed for her dementia. (Id. at 102; 126). Dr. Vargo defined dementia as a decline in intellectual function. (Id. at 118). The allegations in the case at bar occurred after Ms. Parker had been diagnosed with dementia. (Id. at 120). Interim Health Care, the agency proving in-home services to Ms. Parker was brought in the year 2005, after she had been released from the hospital. (Id. at 128). The diagnosis at that time was Alzheimer's/dementia. (Id. at 128). At that point, she was receiving two medications directed specifically to her dementia. (Id. at 129). Dr. Vargo testified on cross-examination that in his opinion once a person is diagnosed with dementia the person cannot be relied upon to make a decision concerning sexual relations. (Id. at 124; 131). He further testified that Ms. Parker was not able to consent to sexual relations. (Id. at 115; 117-118).
 {¶ 8} Pamela Parker, Bonnie's daughter, testified during the time period alleged in the Indictment, her mother was "forgetting stuff" and was not able to take care of herself. (1T. at 143). She further testified that her mother suffered from Alzheimer's and dementia that was severe until she received treatment and in-home care. (1T. at 145-146).
 {¶ 9} Appellant denied having sexual relations with Ms. Parker when interviewed by the police. (1T. at 185). He denied ever exposing himself to Ms. Parker. (Id. at 188). He further denied ever bathing, changing or showering Ms. Parker. (Id.). *Page 5 
Appellant's semen was found on a chair in Ms. Parker's home. (1T. at 182). Ms. Parker had injuries consistent with having had sexual relations. (1T. at 225-241).
 {¶ 10} In the defense case, Diane Ferguson, the case manager for the Passport Program at the Central Ohio Area Agency on Aging testified that Bonnie Parker qualified for home health care services, but did not meet the criteria for any specialized mental health treatment or assistance. (1T. at 260). On cross-examination, Ms. Ferguson testified that under the program's criteria dementia is classified as a physical disorder not as a mental disease. (Id. at 269).
 {¶ 11} Appellant's wife and Bonnie Parkers son, James, testified and expressed their belief that appellant did not rape their mother.
 {¶ 12} Appellant testified on his own behalf. He admitted having consensual sexual intercourse with his mother-in-law on three occasions during a two-week period in early 2005. Appellant was aware at the time that Bonnie had been diagnosed with dementia. (1T. at 307-308). He testified that Ms. Parker was the aggressor. (1T. at 310). He further admitted to having sex with his mother-in-law while she was bent over the chair in her living room. (1T. at 311). Appellant testified that his semen was found on the back of that chair because he masturbated while his mother-in-law was sleeping in the chair. (1T. at 312-313). Appellant further admitted that he had Bonnie rub his penis with lotion because "it was dry down there." (1T. at 316). He admitted to having his mother-in-law fondle him "six or seven times." (1T. at 316). He said that she knew what she was doing and that he did not take advantage of her mental state. (1T. at 305, 310). He denied raping her and denied having sexual relations with her on February 23, 2006. (1T. at 313-314). He denied committing any crimes, but acknowledged that from a moral *Page 6 
standpoint, he knew that having sexual relations with his mother-in-law "wasn't right." (1T. at 320).
 {¶ 13} At the conclusion of the state's case, the trial court directed an acquittal on two of the rape counts. (1T. at 255-256). The jury returned verdicts of guilty on the remaining counts, and rendered special findings stating that the state had failed to prove that appellant compelled his mother-in-law to submit to sexual conduct or sexual contact by force or threat of force. The court sentenced appellant to a maximum ten-year prison term on the rape conviction and concurrent one-year prison terms on the GSI convictions. (2T. at 414).
 {¶ 14} Appellant timely appealed submitting the following six assignments of error for our consideration:
 {¶ 15} "I. DEFENDANT-APPELLANT'S CONVICTIONS FOR RAPE AND GROSS SEXUAL IMPOSITION ARE NOT SUPPORTED BY EVIDENCE SUFFICIENT TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSES OF THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; OR ALTERNATIVELY, ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} "II. THE LACK OF DIFFERENTIATION IN THE COUNTS OF THE INDICTMENT, THE TRIAL COURT'S INABILITY TO SPECIFY THE NUMERICAL DESIGNATION OF THE ACQUITTED COUNTS OF RAPE, AND ITS FAILURE TO NARROW THE TIME FRAME IN THE JURY INSTRUCTIONS FOR THE REMAINING COUNTS DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO ADEQUATE NOTICE AND THE ABILITY TO PROTECT HIMSELF AGAINST DOUBLE JEOPARDY, *Page 7 
AND HIS RIGHT TO BE TRIED ON THE SAME ESSENTIAL FACTS ON WHICH THE GRAND JURY FOUND PROBABLE CAUSE, IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
 {¶ 17} "III. THE ADMISSION INTO EVIDENCE OF THE ALLEGED VICTIM'S HEARSAY STATEMENTS MADE DURING A FORENSIC INTERVIEW INTENDED SOLELY FOR USE IN A CRIMINAL PROSECUTION VIOLATED THE RULES OF EVIDENCE AND DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT OF CONFRONTATION AND CROSS-EXAMINATION UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
 {¶ 18} "IV. DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR JURY TRIAL UNDER THE FIFTH, SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 5, 10 AND 16 OF THE OHIO CONSTITUTION AS A RESULT, OF THE FOLLOWING INSTANCES OF PROSECUTORIAL MISCONDUCT: (A) CHARGING MANIPULATION AND ABUSE, (B) ELICITING PATENTTLY INADMISSIBLE TESTIMONIAL HEARSAY AND POLICE OPINION TESTIMONY, (C) IMPROPER CROSS-EXAMINATION OF THE ACCUSED, AND (D) IMPROPER AND MISLEADING REMARKS AND "SANDBAGGING" DURING SUMMATION.
 {¶ 19} "V. DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND *Page 8 FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION AS A RESULT OF THE FOLLOWING ERRORS BY TRIAL COUNSEL: (A) FAILURE TO CHALLENGE A FLAWED INDICTMENT AND JURY INSTRUCTIONS, (B) FAILURE TO OBJECT TO INADMISSIBLE EVIDENCE AND A PROTRACTED PATTERN OF PROSECUTORIAL MISCONDUCT, (C) ELICITING OR INVITING DAMAGING TESTIMONY DURING CROSS-EXAMINATION OF THE STATE'S WITNESSES, (D) CALLING DEFENDANT-APPELLANT'S WIFE AS A DEFENSE WITNESS, AND (E) MAKING DAMAGING REMARKS AND OTHER ERRORS DURING SUMMATION.
 {¶ 20} "VI. THE MAXIMUM TEN YEAR PRISON TERM TO WHICH DEFENDANT-APPELLANT WAS SENTENCED FOR THE SINGLE COUNT OF RAPE IS UNSUPPORTED BY THE RECORD AND IS CONTRARY TO LAW."
 I. {¶ 21} In his First Assignment of Error, appellant argues that his convictions for rape and gross sexual imposition are against the weight and sufficiency of the evidence. Specifically, appellant maintains that the State failed to produce adequate proof that the victim was substantially impaired. We disagree.
 {¶ 22} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. Search Term Begin State v. Thompkins,78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E. 2d 541 Search Term End, superseded by constitutional amendment on other grounds as stated by State v.Smith, 80 Ohio St. 3d 89, 1997-Ohio-355, 684 N.E. 2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden *Page 9 
of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 23} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, superseded by State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St. 3d 89.
 {¶ 24} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App. 3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St. 3d at 386.
 {¶ 25} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 26} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St. 3d 380,678 N.E. 2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E. 2d 541. The court held that sufficiency of the evidence is a test of *Page 10 
adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E. 2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387,678 N.E. 2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 27} "Both C.E. Morris Co., 54 Ohio St. 2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St. 3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference than does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App. 3d 155, 159, *Page 11 694 N.E. 2d 989." State v. Wilson, 713 Ohio St. 3d 382, 387-88, 2007-Ohio-2202
at ¶ 25-26; 865 N.E.2d 1264, 1269-1270.
 {¶ 28} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St. 3d at 387. (Quoting State v. Martin (1983),20 Ohio App. 3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 29} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 30} In the case at bar, appellant was found guilty of one count of rape, which required that appellant knew the victim's capability was substantially impaired. More particularly, R.C. 2907.02 states:
 {¶ 31} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: *Page 12 
 {¶ 32} "* * *
 {¶ 33} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 34} Appellant was also found guilty of three counts of gross sexual imposition in violation of R.C. 2907.05 which states:
 {¶ 35} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 36} "* * *
 {¶ 37} "(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 38} Appellant first argues that the victim's statements indicate that she made a knowing and conscious decision to refuse to consent to, and affirmatively resist, sexual intercourse and fondling. Therefore, she was not "substantially impaired." In essence, appellant claims that if the State produces testimony that the victim resisted sexual *Page 13 
relations, it may not prosecute the accused upon the theory that the victim was "substantially impaired."
 {¶ 39} To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial. See Crim. R. 12(C)(2); State v. Schultz(1917), 96 Ohio St. 114,117 N.E. 30; State v. Hardy, Cuyahoga App. No. 82620, 2004-Ohio-56; State v.Blalock, Cuyahoga App. Nos. 80419 and 80420, 2002-Ohio-4580; Statev. Kenney (May 10, 2000), 5th Dist. No. CA93-480A;State v. Avery (1998), 26 Ohio App.3d 36, 709 N.E.2d 875; State v.Biros (1997), 78 Ohio St.3d 426, 436, 678 N.E. 2d 891, 901-902, citingState v. Joseph (1995), 73 Ohio St. 3d 450, 455, 653 N.E. 2d 285,290-291; and State v. Mills (1992), 62 Ohio St. 3d 357, 363,582 N.E.2d 972, 980 (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); see, also, State v. Williams (1977), 51 Ohio St. 2d 112, 117, 98, 101,364 N.E. 2d 1364, 1367-1368, death penalty vacated (1977), 438 U.S. 911,98 S.Ct. 3137, 57 L.Ed. 2d 1156.
 {¶ 40} In the case at bar, the appellant was indicted in one count with committing rape of a substantially impaired individual and/or committing rape by force. In other words, the State charged the appellant with different ways of committing the same offense. InUnited States v. Miller, the United States Supreme Court noted:
 {¶ 41} "The Court has long recognized that an indictment may charge numerous offenses or the commission of any one offense in several ways. As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime. See,e.g., *Page 14 Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927);Salinger v. United States, 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398
(1926). See also Berger v. United States, supra; Hall v.United States, 168 U.S. 632, 638-640, 18 S.Ct. 237, 239-240, 42 L.Ed. 607
(1898). Indeed, a number of longstanding doctrines of criminal procedure are premised on the notion that each offense whose elements are fully set out in an indictment can independently sustain a conviction. See,e.g., Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 654,24 L.Ed.2d 610 (1970) (`[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged'); Crain v. United States, 162 U.S. 625, 634-636, 16 S.Ct. 952,954-956, 40 L.Ed. 1097 (1896) (indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved); Dealy v.United States, 152 U.S. 539, 542, 14 S.Ct. 680, 681, 38 L.Ed. 545 (1894) (prosecution's failure to prosecute certain counts of an indictment does not affect the validity of the indictment as to the other counts)."471 U.S. 130, 136, 105 S.Ct. 1811, 1815. Accord, State v. Daniels (1959),169 Ohio St. 87, 157 N.E. 2d 736.
 {¶ 42} Accordingly, in the case at bar, the State could proceed on both theories; it was for the jury to decide which, if any theory to believe. The jury found that appellant did not purposely compel the victim to submit by force or threat of force. Therefore appellant's convictions turn upon whether the evidence is sufficient to prove the "substantial impairment" charge.
 {¶ 43} The Ohio Supreme Court has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's *Page 15 
ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." State v. Zeh (1987), 31 Ohio St. 3d 99,104. "`Substantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." State v. Brady, Cuyahoga App. No. 87854,2007-Ohio-1453 at ¶ 78; State v. Jordan, Harrison App. No. 06 HA 586,2007-Ohio-3333 at ¶ 97; State v. Hillock, 7th Dist. No. 02-538-CA, 2002-Ohio-6897, at ¶ 21. However, although Zeh touched on the issue of what constituted "substantial impairment," its holding was limited to instructing when the defense could ask the court to bar the state from utilizing evidence of the contested mental condition of a victim-potential witness. Id. at 105, 509 N.E. 2d 414. State v.Hillock, Harrison App. No. 02-538-CA, 2002-Ohio-6897 at ¶ 24.
 {¶ 44} In State v. Novak, Lake App. No. 2003-L-077, 2005-Ohio-563, the Court made the following observation:
 {¶ 45} "Novak disputes whether Doe's ability to resist was substantially impaired and, if it were, whether he knew or had reasonable cause to believe that her ability to resist was impaired. Novak cites to several instances in the record where Doe exerted her will, either verbally or by pulling away, to terminate sexual contact. Novak also cites to testimony where Doe initiated the sexual contact. Finally, Novak claims that when Doe would express her discomfort, the sexual contact would cease. Therefore, Novak concludes, any sexual contact between himself and Doe was consensual. *Page 16 
 {¶ 46} "Novak's argument misconstrues the nature of Doe's impairment by equating the ability to resist with the ability to consent. The gross sexual imposition statute is written disjunctively; the sexual contact between Novak and Doe is unlawful if Doe's ability to resist orconsent is substantially impaired. Even a five-year-old child can resist sexual contact by verbalizing discomfort or the desire that the contact cease and by pulling away; the child's ability to resist, however, does not mean that the child has consented to the initial contact or even has the ability to do so. Novak could still be found guilty provided the state proved that Doe's ability to appraise the nature of her conduct was diminished." Id. at ¶ 19-20.
 {¶ 47} Both R.C. 2907.02 and R.C. 2907.05 make the activity unlawful if the victim's ability to resist or consent is substantially impaired. A finding that he did not use force does not equate with a finding that the victim had the ability to consent or to resist. Accordingly, the issue in the case at bar is whether the victim's ability to resist or give consent to the sexual conduct and sexual contact she engaged in with appellant was substantially impaired. See, also, State v.Brady, supra. (Appellant found guilty of rape of mentally retarded stepdaughter whose ability to resist or consent was substantially impaired due to a mental or physical condition even though victim told appellant "no" and "that she did not want to have sex.").
 {¶ 48} As to whether appellee proved that victim's ability to resist or consent was substantially impaired by a physical condition or because of advanced age, the appellant next argues that because the trial court did not incorporate "mental condition" in the jury instructions as a basis for finding substantial impairment this Court cannot consider the victim's mental condition on the issue of substantial impairment. To do so *Page 17 
would result in appellant being convicted of a statutory ground that was not presented to the jury.
 {¶ 49} Specifically, appellant argues that this court may not consider evidence of the victim's mental condition because in its instructions to the jury, the trial court defined "substantial impairment" in terms of "physical condition or advanced age." In other words, the trial court did not include the victim's "mental condition" in its definition of substantial impairment.
 {¶ 50} This is not a case, as appellant argues, that the State asks this Court to decide the appeal on the theory it did not pursue at trial and on which the challenged conviction was obtained, but on a new theory that it advances for the first time on appeal. The Indictment and Bill of Particulars both contained the definition of "substantial impairment" relating to a "mental or physical condition." Both the prosecutor and appellant's trial counsel referred to Alzheimer's and dementia in their respective summations. Accordingly, the "mental condition" theory was before the jury "as a part of a coherent theory of guilt and not merely due to an incidental reference and that upon reviewing the principal stages of trial, the theory can be characterized as having been presented [to the jury] in a focused or otherwise cognizable sense."Chiarella v. United States (1980), 445 U.S. 222, 236, 100 S.Ct. 1108,1119; Cola v. Reardon (1st. Cir 1986), 787 F. 2d 681, 693, cert. denied,479 U.S. 930, 107 S.Ct. 398, 93 L.Ed. 2d 351 (1986).
 {¶ 51} Both the rape and the gross sexual imposition statute list two impairments: 1). mental or physical condition; or 2). advanced age. Appellant does not dispute that by the time the case went to trial Bonnie Parker's dementia had progressed to the point *Page 18 
that she was "unavailable" as a witness. Appellant merely ascribes the condition to a mental, rather than a physical ailment. We would note that appellant presented the testimony of Diane Ferguson, the case manager for the Passport Program at the Central Ohio Area Agency on Aging. (1T. at 260). On cross-examination, Ms. Ferguson testified that under the program's criteria dementia is classified as aphysical disorder not as a mental disease. (Id. at 269).
 {¶ 52} The ultimate question in cases of this kind is not as to the exact causation of substantial impairment. The ultimate questions are (1) does victim have a determinable physical or mental impairment, or advanced age, and (2) if so, does it render him or her unable to resist or consent to the sexual conduct or contact. The exact cause is not as important as the result. Whether the victim's ability to consent or resist was substantially impaired by a mental, rather than a physical, ailment does not change the fact that the victim's ability to resist or consent was substantially impaired within the meaning of the statutes.
 {¶ 53} As to whether appellee proved that the victim's ability to resist or consent was substantially impaired by a physical condition, or because of advanced age the following testimony is relevant.
 {¶ 54} Bonnie Parker was eighty years old at the time of trial. (1T. at 136). She had been a patient of Dr. Ronald Vargo since 1993. (1T. at 98). Ms. Parker suffers from hypertension, diabetes, heart disease, and dementia. (Id. at 98). Dr. Vargo testified, "Multi-infarct dementia" is "a condition based on underlying medical conditions, hypertension, diabetes, heart disease, and basically causes hardening of the arteries in the brain, and over time the blood flow is choked off, so those areas of the brain just die *Page 19 
away." (1T. at 99-100). Dr. Vargo testified that Bonnie began having memory problems in the year 2000. (Id. at 101; 126). By the year 2003, her problems progressed to the stage where medication was prescribed for her dementia. (Id. at 102; 126). Dr. Vargo defined dementia as a decline in intellectual function. (Id. at 118). The allegations in the case at bar occurred after Ms. Parker had been diagnosed with dementia. (Id. at 120). Interim Health Care, the agency providing in-home services to Ms. Parker was brought in the year 2005, after she had been released from the hospital. (Id. at 128). The diagnosis at that time was Alzheimer's/dementia. (Id. at 128). At that point, she was receiving two medications directed specifically to her dementia. (Id. at 129). Dr. Vargo testified on cross-examination that in his opinion once a person is diagnosed with dementia the person cannot be relied upon to make a decision concerning sexual relations. (Id. at 124; 131). He further testified that Ms. Parker was not able to consent to sexual relations. (Id. at 115; 117-118).
 {¶ 55} Pamela Parker, Bonnie's daughter testified during the time period alleged in the Indictment, her mother was "forgetting stuff" and was not able to take care of herself. (1T. at 143). She further testified that her mother suffered from Alzheimer's and dementia that was severe until she received treatment and in-home care. (1T. at 145-146).
 {¶ 56} Appellant denied having sexual relations with Ms. Parker when interviewed by the police. (1T. at 185). He denied ever exposing himself to Ms. Parker. (Id. at 188). He further denied ever bathing, changing or showering Ms. Parker. (Id.). Appellant's semen was found on a chair in Ms. Parker's home. (1T. at 182). Ms. Parker had injuries consistent with having had sexual relations. (1T. at 225-241). *Page 20 
 {¶ 57} At trial appellant admitted to having sexual intercourse and to having sexual contact on more than one occasion with Ms. Parker. (1T. at 313).
 {¶ 58} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of rape and gross sexual imposition.
 {¶ 59} We hold, therefore, that the State met its burden of production regarding each element of the crime of rape and gross sexual imposition and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 60} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 61} Although appellant cross-examined the witnesses and argued that Bonnie Parker consented to the sexual relations, and further, that the victim's ability to resist or consent was not substantially impaired, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 62} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the *Page 21 
inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App. 3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 63} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 64} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 65} Appellant's First Assignment of Error is overruled.
 II. {¶ 66} In his Second Assignment of Error appellant argues that his convictions must be reversed because it is impossible to determine if he was convicted of the same crimes for which he was indicted and he is unable to protect himself of his right not to be tried twice for the same offense. We disagree. *Page 22 
 {¶ 67} To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial. See Crim. R. 12(C)(2); State v. Schultz(1917), 96 Ohio St. 114,117 N.E. 30; State v. Hardy, Cuyahoga App. No. 82620, 2004-Ohio-56; State v.Blalock, Cuyahoga App. Nos. 80419 and 80420, 2002-Ohio-4580; Statev. Kenney (May 10, 2000), 5th Dist. No. CA93-480A;State v. Avery (1998), 26 Ohio App.3d 36, 709 N.E.2d 875; State v.Biros (1997), 78 Ohio St.3d 426, 436, 678 N.E. 2d 891, 901-902, citingState v. Joseph (1995), 73 Ohio St. 3d 450, 455, 653 N.E. 2d 285,290-291; and State v. Mills (1992), 62 Ohio St. 3d 357, 363,582 N.E.2d 972, 980 (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); see, also, State v. Williams (1977), 51 Ohio St. 2d 112, 117, 98, 101,364 N.E. 2d 1364, 1367-1368, death penalty vacated (1977), 438 U.S. 911,98 S.Ct. 3137, 57 L.Ed. 2d 1156.
 {¶ 68} We must be mindful that in dealing with an offense against a substantially impaired person, a certain degree of inexactitude in averring the date of the offense is not necessarily fatal to its prosecution. State v. Shepherd, Cuyahoga App. No. 81926, 2003-Ohio-3356. This is especially relevant in this matter as the case proceeded to trial approximately one to two years after the alleged incidents, and at a time when the victim was no longer competent to testify at trial.
 {¶ 69} Appellant had notice and opportunity to defend against the charge for which he was convicted. In the case at bar, appellant admitted to having sexual intercourse with Bonnie Parker on three different occasions. (1T. at 313-314). Ms. Parker had injuries consistent with having had sexual relations. (1T. at 225-241). The *Page 23 
jury was not required to believe appellant when he denied having sexual intercourse with Ms. Parker on February 23, 2006.
 {¶ 70} There was no danger of appellant being convicted two times for the same offense because the jury was only asked to decide one count of rape that was alleged to have occurred during the time period set forth in the Indictment. Further, the two additional counts of rape were dismissed. Accordingly, a rational trier of fact could have found one offense of rape of a substantially impaired person proven beyond a reasonable doubt based entirely upon appellant's admission to having sexual intercourse with his mother-in-law. See, State v. Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453; State v. Hardy, Cuyahoga App. No. 82620,2004-Ohio-56. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.
 {¶ 71} Appellant's Second Assignment of Error is overruled.
 III. {¶ 72} In his Third Assignment of Error, appellant maintains that he was denied his right to a fair trial because of the trial court's admission of testimonial hearsay evidence in violation of hisSixth Amendment right to confront witnesses. Specifically, appellant contends that Bonnie Parker's statement to Kailey Mahan a forensic nurse and the coordinator of the Sexual Assault Nurse Examiner program identifying appellant as her assailant is testimonial in nature in accordance withCrawford v. Washington and therefore inadmissible pursuant to theSixth Amendment to the United States Constitution. We disagree.
 {¶ 73} In the recent case of State v. Stahl, 111 Ohio St. 3d 186,2006-Ohio-5482, 855 N.E. 2d 834, the Ohio Supreme Court held that where the rape victim made a *Page 24 
statement to police, then subsequently presents herself for a medical examination for purposes of gathering evidence of the crime and repeats the identification, the statement to medical personnel is not testimonial and may be admitted into evidence.[1]
 {¶ 74} "For Confrontation Clause purposes, a testimonial statement includes one made `under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' Crawford, 541 U.S. at 52, 124 S.Ct. 1354,158 L.Ed. 2d 177. In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." Stahl, supra, 111 Ohio St. 3d at 196; 2006-Ohio-5482
at ¶ 36; 855 N.E. 2d at 844.
 {¶ 75} In this matter, the statements to Kailey Mahan occurred when Ms. Parker was brought for a medical evaluation after she reported that she had been raped. Ms. Parker had already identified appellant as her assailant to the police before Nurse Mahan treated her. As was true inStahl, supra, "Having already identified the perpetrator to police, [Ms. Parker] could reasonably have assumed that repeating the same information to a nurse or other medical professional served a separate and distinct medical purpose such as those in this case: determining whether the assailant had any communicable diseases and whether any specified course of treatment might therefore be appropriate, and for purposes of structuring a release plan to determine the *Page 25 
likelihood of repeated activity in a residential or community setting."111 Ohio St. 3d at 198; 2006-Ohio-5482 at ¶ 46; 855 N.E. 2d at 846.
 {¶ 76} Accordingly, Bonnie Parker's statement to Kailey Mahan was not testimonial and was properly admitted into evidence by the trial court.
 {¶ 77} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 78} In his Fourth Assignment of Error, appellant contends that prosecutorial misconduct resulted in reversible error. We disagree.
 {¶ 79} The prosecutor's duty in a criminal trial is two-fold. The prosecutor is to present the case for the State as its advocate and the prosecutor is responsible to ensure that an accused receives a fair trial. Berger v. U. S. (1935), 295 U. S. 78; State v. Staten (1984),14 Ohio App. 3d 197.
 {¶ 80} Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St. 3d 19, 514 N.E.2d 394;State v. Maurer (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. The touchstone of analysis is "the fairness of the trial, not the culpability of the prosecutor." State v. Underwood (1991),73 Ohio App. 3d 834, 840-841, 598 N.E. 2d 822, 826, citing Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed. 2d 78, 87-88. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. State v.Keenan (1993), 66 Ohio St. 3d 402, 410, 613 N.E. 2d 203, 209-210;Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed. 2d 144. *Page 26 
 {¶ 81} Appellant first argues that the State committed misconduct because the prosecutor failed to narrow the time frame of the incidents alleged in the indictment and failed to dismiss the unprovable counts.
 {¶ 82} To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial. See Crim. R. 12(C)(2); State v. Schultz(1917), 96 Ohio St. 114,117 N.E. 30; State v. Hardy, Cuyahoga App. No. 82620, 2004-Ohio-56; State v.Blalock, Cuyahoga App. Nos. 80419 and 80420, 2002-Ohio-4580; Statev. Kenney (May 10, 2000), 5th Dist. No. CA93-480A;State v. Avery (1998), 26 Ohio App.3d 36, 709 N.E.2d 875; State v.Biros (1997), 78 Ohio St.3d 426, 436, 678 N.E. 2d 891, 901-902, citingState v. Joseph (1995), 73 Ohio St. 3d 450, 455, 653 N.E. 2d 285,290-291; and State v. Mills (1992), 62 Ohio St. 3d 357, 363,582 N.E.2d 972, 980 (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); see, also, State v. Williams (1977), 51 Ohio St. 2d 112, 117, 98, 101,364 N.E. 2d 1364, 1367-1368, death penalty vacated (1977), 438 U.S. 911,98 S.Ct. 3137, 57 L.Ed. 2d 1156.
 {¶ 83} Specificity as to the time and date of an offense is not required in an indictment. Under R.C. 2941.03: "an indictment or information is sufficient if it can be understood therefrom: * * *(E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. State v. Adams, 5th Dist. No. 02-CA-00043, 2002-Ohio-5953 at ¶ 8. *Page 27 
 {¶ 84} Impreciseness and inexactitude of the temporal evidence at trial is not "per se impermissible or necessarily fatal to a prosecution." State v. Robinette (Feb. 27, 1987), 5th
Dist. No. CA-652. The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend him. State v. Sellards (1985), 17 Ohio St. 3d 169,478 N.E.2d 781; State v. Gingell (1982), 7 Ohio App. 3d 364, 368, 455 N.E. 2d 1066,1071; State v. Kinney (1987), 35 Ohio App. 3d 84, 519 N.E. 2d 1386. Appellant has not argued or alleged that the inexactitude prejudiced his ability to defend himself at trial. Further, the trial court granted appellant's motion to dismiss two counts of rape before the case was submitted to the jury.
 {¶ 85} Appellant next argues that the State impermissibly elicited hearsay statements and opinions regarding the credibility of the victim from Detective Andy Waugh.
 {¶ 86} Evid. R. 103(A) provides that error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected and, if the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent. In the case at bar, counsel did not object at trial.
 {¶ 87} Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B). State v. Joseph (1995),73 Ohio St. 3d 450, 455, 653 N.E.2d 285, 291. Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Page 28 State v. Long (1978), 53 Ohio St. 2d 91, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 88} In U.S. v. Dominguez Benitez (June 14, 2004), 542 U.S. 74,124 S.Ct. 2333, 159 L.Ed. 2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U. S. 279, 309-310
(1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." 124 S.Ct. at 2339. See, also,State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also,State v. Fisher, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7,789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v.Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry
(2004), 101 Ohio St. 3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes (2002), 94 Ohio St. 3d 21, 27,759 N.E.2d 1240, quoting State v. Long (1978), *Page 29 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 89} In the case at bar, the Detective testified that Ms. Parker was descriptive, consistent and emotional in her recitation of the attacks. She did not appear to have a motivation to fabricate the allegation. We find no error as this is not vouching for the victim's credibility. The Detective simply gave his impressions of Bonnie based upon his experience in interviewing victim's of crime.
 {¶ 90} The detective's testimony that the victim's medical records were consistent with her statements was harmless error, if error at all. The jury had both the medical records and the statements of Ms. Parker. The jury also had the testimony of the forensic nurse Kailey Mahan who gave the same opinion. Accordingly, the detective's testimony was merely cumulative. The jury was free to draw its own conclusions concerning any inconsistencies.
 {¶ 91} Appellant's arguments concerning how his semen was deposited upon the chair in the victim's living room are feckless in light of his admission during the trial that he masturbated upon the chair. (1T. at 312).
 {¶ 92} Appellant next argues that the prosecutor committed misconduct during his cross-examination. Specifically asking whether he had "a lot of reasons to lie" and whether he was denying the allegations because his relatives were present in the courtroom as spectators. This was fair comment by the State. On direct examination appellant's attorney asked appellant if he had any reason to lie. (1T. at 314).
 {¶ 93} Appellant next argues that the prosecutor committed misconduct during closing argument. *Page 30 
 {¶ 94} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St. 2d 583, 589,433 N.E. 2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v.Maurer (1984), 15 Ohio St. 3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 95} In State v. Draughn (1992), 76 Ohio App. 3d 666,602 N.E. 2d 790, this Court stated: "[i]n opening closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, `I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See State v. Smith (1984),14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. Id.
 {¶ 96} "As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, The evidence supports the conclusion that the defendant is lying, is not telling *Page 31 
the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth.' See State v. Strobel (1988),51 Ohio App. 3d 31, 554 N.E.2d 916. He may not say, `I believe the defendant is lying,' for the same reasons as above.
 {¶ 97} "In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.
 {¶ 98} "Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.
 {¶ 99} "However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case.United States v. Solivan (C.A.6, 1991), 937 F.2d 1146". Id. at 670-71,602 N.E. 2d at 793. *Page 32 
 {¶ 100} Appellant first contends that the prosecutor argued appellant committed multiple sexual assaults during the period alleged in the indictment. The jury convicted appellant of one count of rape and three counts of gross sexual imposition. Accordingly, these comments were correct.
 {¶ 101} Appellant next argues that the prosecutor suggested that he was aware of additional counts of rape not presented because of the incompetency of the victim. The trial court informed the jury prior to the commencement of trial that appellant was charged with three counts of rape. (1T. at 15-16). Appellant himself testified that he had sexual intercourse with Ms. Parker on three separate occasions. Accordingly, any error was harmless beyond a reasonable doubt.
 {¶ 102} We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comments not been made on the part of the prosecution. State v. Benge, 75 Ohio St. 3d 136, 141, 1996-Ohio-227.
 {¶ 103} In the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.
 {¶ 104} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 105} In his Fifth Assignment of Error, appellant argues that he was denied effective assistance of trial counsel. We disagree.
 {¶ 106} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective *Page 33 
standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed. 2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed. 2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 107} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 108} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra;Bradley, supra.
 {¶ 109} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the *Page 34 
alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of theStrickland test.
 {¶ 110} Appellant first argues that his trial attorney's failures to raise in the trial court the same issues and arguments that he now presents on appeal in his previous four Assignments of Error rendered his performance ineffective. Since we have found no grounds for reversal of his convictions in any of appellant's previous four assignments of error, we obviously do not consider his counsel ineffective in this regard.
 {¶ 111} Appellant next argues that his trial counsel rendered constitutionally deficient representation when he elicited damaging testimony during the cross-examination of the State's witnesses.
 {¶ 112} Appellant argues that Pam Parker initially stated that she never spoke to her mother about him. (1T. at 150). Upon further questioning by defense counsel, the witness stated that she believed her mother's allegations in this case based on what she had heard from other people, including a social worker and neighbors who had spoken to her mother. (1T. at 151-152). However, a review of the record establishes that on direct examination by the prosecuting attorney Pam Parker testified that she was familiar with the facts of the case. When asked how she became familiar, Pam Parker testified that Bonnie had told her many times. (1T. at 147). When asked on direct examination if she initially believed her mother, Pam Parker testified that she did not because "I wouldn't believe my brother-in-law would do something like that because he was part of our family." (Id. at 147).
 {¶ 113} Appellant next cites the testimony of Detective Waugh as set forth in his Fourth Assignment of Error, supra in support of his claim that trial counsel was *Page 35 
ineffective. Because we have found it was not error to admit the testimony of Detective Waugh, we obviously do not consider his counsel ineffective in this regard.
 {¶ 114} Appellant next argues that trial counsel was ineffective in asking the forensic nurse her opinion as to whether the sexual activity was the result of a sexual assault. (1T. at 246). He additionally argues that counsel was ineffective in calling appellant's wife as a witness.
 {¶ 115} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland,466 U.S., at 690, 104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court `may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' Massaro v. United States,538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. TheSixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843;Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305
(1986); Strickland, supra, at 689, 104 S.Ct. 2052; United States v.Cronic, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)."Yarborough v. Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 116} A decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation *Page 36 
with his client." State v. Murphy, 91 Ohio St. 3d 516, 524, 2001-Ohio-0112. This court can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as `to make ordinary counsel scoff."' State v. Woullard, 158 Ohio App. 3d 31,813 N.E. 2d 964, 2004-Ohio-3395, ¶ 39, quoting State v. Yarber (1995),102 Ohio App. 3d 185, 188, 656 N.E. 2d 1322. Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. State v. Brown (1988), 38 Ohio St. 3d 305, 319,528 N.E. 2d 523. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter.State v. Clayton (1980), 62 Ohio St. 2d 45, 49, 402 N.E. 2d 1189, citingPeople v. Miller (1972), 7 Cal. 3d 562, 573-574, 102 Cal. Rptr. 841, 498 P.2d 1089; State v. Wiley, 10th Dist. No. 03AP-340,2004-Ohio-1008 at ¶ 21.
 {¶ 117} The Ohio Supreme Court has stated, "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v.Clayton (1980), 62 Ohio St. 2d 45, 49, 16 O.O.3d 35, 402 N.E. 2d 1189."State v. Myers (2002), 97 Ohio St. 3d 335, 362, 780 N.E.2d 186, 217. Furthermore, an attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., State v. Coulter (1992),75 Ohio App.3d 219.
 {¶ 118} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record *Page 37 
that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 119} Appellant's Fifth Assignment of Error is overruled.
 VI. {¶ 120} In his Sixth Assignment of Error, appellant contends that his sentence on one count of rape is unsupported by the record and contrary to law. We disagree.
 {¶ 121} At the outset we note, there is no constitutional right to an appellate review of a criminal sentence. Moffitt v. Ross (1974),417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; McKane v. Durston (1894),152 U.S. 684, 687, 14 S. Ct. 913. 917; State v. Smith (1997),80 Ohio St. 3d 89, 1997-Ohio-355, 684 N.E.2d 668; State v. Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823. An individual has no substantive right to a particular sentence within the range authorized by statute.Gardner v. Florida (1977), 430 U.S. 349, 358, 97 S.Ct. 1197, 1204-1205.
 {¶ 122} In State v. Johnson, the Ohio Supreme Court made the following observation: "Instead, after the sentencing court imposes a separate prison term for each conviction, it may exercise its discretion to determine whether consecutive sentences are appropriate based upon the particular facts and circumstances of the case. See State v. Saxon,109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 9; State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus, ¶ 100 ("Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for *Page 38 
imposing maximum, consecutive, or more than the minimum sentences")."116 Ohio St.3d 541, 2008-Ohio-69 at ¶ 18.
 {¶ 123} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.
 {¶ 124} The trial court was not required to find any additional fact in order to impose this sentence. The court could have imposed the maximum sentence without making any statement on the record. The fact that the trial judge explained his reasons for imposing the maximum sentence on the record cannot transform a sentence within the rangeprovided by statute into a constitutionally infirm sentence on the grounds that the statements constitute impermissible "judicial fact-finding." State v. Groggans, Delaware App. No. 2006-CA-07-0051,2007-Ohio-1433.
 {¶ 125} Finally, this Court exhaustively addressed the same issue inState v. Paynter, Muskingum App. No. CT2006-0034, 2006-Ohio-5542 andState v. Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823.
 {¶ 126} Based upon our holdings in Paynter and Firouzmandi, we find the sentence imposed in the case sub judice did not violate appellant's rights under the due process clauses of the United States Constitution and/or Ohio Constitution.
 {¶ 127} Appellant's Sixth Assignment of Error is overruled. *Page 39 
 {¶ 128} For the foregoing reasons, the judgment of the Licking County Court of Common Pleas, Ohio, is affirmed.
 By Gwin, J., Hoffman, P.J., and Wise, J., concur. *Page 40 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.
[1] We note that appellant makes no reference to the Ohio Supreme Court's decision in Stahl in his brief. *Page 1